**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| IRON OAK TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. | Civil Action No. 3:18-md-2835-M |
| FUJITSU AMERICA, INC., | Civil Action No. 3:16-cv-3319-M |
| TOSHIBA AMERICA INFORMATION SYSTEMS INC. and TOSHIBA CORPORATION, | Civil Action No. 3:16-cv-3320-M |
| ASUSTEK COMPUTER INC., | Civil Action No. 3:16-cv-3322-M |
| SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG ELECTRONICS CO., LTD., | Civil Action No. 3:17-cv-1259-M |
| SHARP ELECTRONICS CORPORATION and SHARP CORPORATION, | Civil Action No. 3:17-cv-2699-M |
| MICROSOFT CORPORATION, | Civil Action No. 3:18-cv-0222-M |
| LENOVO (UNITED STATES) INC. and LENOVO HOLDING COMPANY, INC., | Civil Action No. 3:18-cv-1539-M |
| DELL INC., | Civil Action No. 3:18-cv-1542-M |
| ACER AMERICA CORPORATION and ACER INC., | Civil Action No. 3:18-cv-1543-M |

**MICROSOFT CORPORATION'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
<u>OF NO DAMAGES AS TO MICROSOFT'S PRODUCTS</u>**

*[This motion applies to all matters where Microsoft products are accused.]*

# **TABLE OF CONTENTS**

SUMMARY ..................................................................................................................................... 1

I.  INTRODUCTION ............................................................................................................... 2

II. BACKGROUND AND UNDISPUTED FACTS .............................................................. 4

III. ARGUMENT ....................................................................................................................... 9

    A.  Actual Notice Under Section 287 Requires A
        Specific Infringement Charge ....................................................................................... 9

    B.  Iron Oak Failed to Provide Actual Pre-Expiration
        Notice as to Any Microsoft Products Under 35 U.S.C. § 287 .................................. 11

IV. CONCLUSION ................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
    24 F.3d 178 (Fed. Cir. 1993) ...................................................................................... 2, 10, 11

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017) ........................................................................................ 9, 10

*Brown v. Offshore Specialty Fabricators, Inc.*,
    663 F.3d 759 (5th Cir. 2011) .................................................................................................. 3

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
    No. 6:11-CV-00201-JRG, 2018 WL 1156284 (E.D. Tex. Mar. 5, 2018) ................................ 3

*Gart v. Logitech, Inc.*,
    254 F.3d 1334 (Fed. Cir. 2001) ..................................................................................... *passim*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................................................ 9

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .................................................................................................................. 3

**Statutes**

35 U.S.C. § 287 ............................................................................................................... *passim*

35 U.S.C. § 287(a) ............................................................................................................. 9, 10

**Other Authorities**

Federal Rule of Civil Procedure 56 ..................................................................................... 1, 8

N.D. Tex. Local Rule 56.3 ....................................................................................................... 1

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.3, Microsoft Corporation hereby moves for Partial Summary Judgment as follows:

## SUMMARY

Microsoft seeks partial summary judgment of no damages as to all its products, across all the consolidated cases, pursuant to 35 U.S.C. § 287 because Plaintiff Iron Oak Technologies failed to provide the prerequisite actual notice of infringement before the asserted patents expired. Iron Oak concedes that § 287 bars any recovery of damages for Microsoft's past sales of any products, including its Windows operating system. *See,* Appx. at A56 (Answer, Case 3:18-cv-222, Dkt. 16 at 16.). Nonetheless, Iron Oak contends that it can recover damages from other Defendants based on their past sales of devices using that same Windows operating system, alleging notice by letters it wrote to those Defendants prior to the patents' expiration. Those letters, however, do not provide the actual notice of infringement that § 287 requires as to any Microsoft product under long-established Federal Circuit precedent. Putting aside the question of whether the letters provide effective notice as to other products mentioned therein, there was no specific charge of infringement by Windows. *See Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345-47 (Fed. Cir. 2001). Microsoft accordingly and respectfully requests that the Court grant partial summary judgment of no damages as to all Microsoft products, regardless of which party sold such products.

The complete factual and legal bases for Microsoft's motion, as well as the evidence cited in support thereof (including appropriate citations to the Appendix), are set forth herein.

## I.   INTRODUCTION

This motion seeks to cut short Iron Oak's legally flawed effort to use these patent infringement cases to cure its failure to provide the actual notice of infringement that 35 U.S.C. § 287 requires for Iron Oak to recover any damages based on Microsoft products.  Indeed, Iron Oak concedes that it cannot recover from Microsoft because it failed to give Microsoft actual notice of infringement before the asserted patents expired.  *See,* Appx. at A56 (Answer, Case 3:18-cv-222, Dkt. 16 at 16 (confirming Iron Oak seeks no damages from Microsoft.))   Yet Iron Oak still seeks to recover from many of Microsoft's customers for their sales of computers, tablets or phones based on the use by those devices of Microsoft's Windows operating system.  But, just as Iron Oak never provided any notice to Microsoft regarding the Windows operating system, Iron Oak also never alleged that any Microsoft product sold by Microsoft customers infringed its patents at any time prior to the expiration of the asserted patents.

Specifically, Iron Oak's letters to Microsoft's customers prior to the expiration of the asserted patents did not provide the required notice for Microsoft's products.  "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device."  *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1993).  Although these pre-expiration letters allege that the asserted patents apply to various products, <u>none</u> refers to Microsoft's Windows operating system as the basis for those allegations or as otherwise infringing.  Instead, those letters <u>point to other software</u> on the accused devices as infringing.  This contrasts starkly with Iron Oak's infringement contentions in current cases where Iron Oak expressly identifies the Windows operating system as the basis for certain of its infringement allegations.[1]  It is those allegations directed to Microsoft products that come too late.

---

[1] As presently understood by Microsoft, Iron Oak alleges that every defendant except Microsoft

Indeed Iron Oak's current contentions, relying on information concerning Windows operating systems that long has been available publicly, demonstrate that its prior allegations were in fact not directed to Microsoft's Windows software.

Under Federal Circuit precedent, infringement notice as to some products is not sufficient to satisfy § 287's requirements as to other products. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345-47 (2001) (letters accusing certain Logitech computer mouse models not sufficient to provide actual notice and recover damages as to unnamed models). And § 287 states that "[i]n the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of <u>the infringement</u> and continued to infringe thereafter…." 35 U.S.C. § 287 (emphasis added). Because Iron Oak indisputably failed to identify to any Defendant that Windows allegedly infringed until after the patents had expired, it cannot recover for "the [alleged] infringement" by Windows or devices using Windows.

Because Iron Oak failed to provide the required actual notice under § 287, it cannot recover damages for any alleged infringement based on Microsoft's Windows operating system or other products regardless of what party sells or distributes those products. Partial summary judgment that no damages are recoverable based on the sale or use of Microsoft products is appropriate.[2]

---

also infringes based on non-Microsoft software or products, such as third party download applications and operation of Google's Android operating system. Those contentions are not the subject of this motion.

[2] As recognized in the stipulated dismissal of Iron Oak's case against HP (with prejudice) and ZTE (without prejudice), the lack of any potential recovery of damages or injunctive relief ends the case. *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 n.5 (1998) (quoting and summarizing *Marye v. Parsons*, 114 U.S. 325, 328–29 (1885)); *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 770 (5th Cir. 2011); *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-00201-JRG, 2018 WL 1156284, at *10 (E.D. Tex. Mar. 5, 2018). Microsoft's instant motion seeks only to establish that it faces no damages, directly or indirectly through its customers, based on any infringement allegedly caused by Microsoft products. Which cases survive such a ruling can be resolved downstream.

3

## II. BACKGROUND AND UNDISPUTED FACTS

1. The relevant facts are simple and not disputable. Iron Oak now asserts only United States Patent Nos. 5,699,275 ("the '275 patent") and 5,966,658 ("the '658 patent") against all Defendants. Iron Oak acquired the '275 and '658 patents, along with other patents, by assignment.

2. The '275 Patent, attached herein as Exhibit 2, expired on April 12, 2015. The '658 patent, attached herein as Exhibit 3, expired on September 26, 2016. Appx. at A6-A40.

3. Both patents had been licensed prior to Iron Oak's acquisition. After it acquired the patents, Iron Oak embarked on an effort to license additional companies. No companies took licenses, the patents expired, and thereafter Iron Oak filed a series of lawsuits asserting various ones of its acquired patents. Those cases have been simplified since filing and are now all consolidated in this Court, pursuant to MDL-2835.

4. Iron Oak accuses a number of different products under both patents across the various cases. In addition to allegations directed to non-Windows/non-Microsoft related products, Iron Oak alleges in the Acer, Asus, Dell, Fujitsu, Huawei, Lenovo, Samsung and Toshiba cases that computers or phones running Microsoft Windows operating system software infringe the '275 patent because of the Windows Automatic Update feature and/or the '658 patent because of the Windows Connection Manager feature. *See, e.g.* Appx. at A83, A88 (*Iron Oak Techs, LLC v. Dell Inc.*, Case 1:17-cv-00999, Dkt. 1 at Ex. F).). Iron Oak seeks damages for sales of these accused products (as well as damages on sales of the other, non-Windows/non-Microsoft related products) from the named Defendants in these cases.

5. Although Iron Oak now accuses Microsoft's customers of infringing based on their use of Microsoft Windows operating system features, Iron Oak concedes that it never gave notice to Microsoft as was required under 35 U.S.C. § 287 prior to filing suit. *See,* Appx. at A62 (Joint

4

Report Regarding Contents of Scheduling Order, Case 3:18-cv-222, Dkt. 22 at 4); Appx. at A58 (Letter from A. Deaver to K. Conaty dated 5/9/2018 ("This letter confirms that plaintiff Iron Oak Technologies, LLC will not contend that it or its licensees marked products with the numbers of either asserted patent in the manner required by 35 U.S.C. § 287.")). Iron Oak further concedes that, as a result, it seeks no damages from Microsoft for any alleged infringement. *See,* Appx. at A56 (Answer, Case 3:18-cv-222, Dkt. 16 at 16).

6. Of the companies that Iron Oak now alleges to infringe because they use Windows software, Iron Oak sent letters to Acer, Asus, Dell, Fujitsu, Lenovo, and Toshiba in 2014.[3] *See, e.g.* Appx. at A93-A105 (*Iron Oak Techs, LLC v. Dell Inc.*, Case 1:17-cv-00999, Dkt. 1 at Ex. G).) Each of those letters identified non-Microsoft software and/or hardware as allegedly infringing the asserted patents.[4] Iron Oak did not allege in 2014 or at any time prior to the patents' expiration that any defined set of products having a particular characteristic infringed either of the asserted patents.

7. The Windows operating system has included an Automatic Update feature[5] since long prior to 2014. Throughout 2014 and at least up through the expiration of the '275 patent, computers that used the Windows operating system also could use non-Microsoft software to download software updates for hardware driver software and other software applications on a computer without using the Windows Automatic Update feature.

---

[3] No letter was sent to Samsung. Iron Oak contends that it sent a letter to Huawei, which Huawei denies ever receiving. Resolution of that debate is irrelevant to Microsoft's motion as the only product mentioned in the letter that Iron Oak alleges that it sent to Huawei is a non-Microsoft smartphone running Google's Android operating system.

[4] Microsoft takes no position as to whether Iron Oak's 2014 letters were adequate notice as to any non-Microsoft products.

[5] This feature has been known by various names, but the variation in naming is not relevant to this motion.

8. The Windows operating system has included a Connection Manager feature since long prior to 2014. Throughout 2014 and at least up through the expiration of the '658 patent, computers that used the Windows operating system also could connect automatically to communication networks using third-party applications or standard-compliant devices without using the Windows Connection Manager feature.

9. None of Iron Oak's 2014 letters identified any Windows operating system features as infringing (or causing infringement of) either patent, and none specifically identified either the Windows Automatic Update or Windows Connection Manager features as allegedly infringing either asserted patent. Nor did any of the 2014 letters mention any actions taken by Microsoft. *See*, Appx. at A78-A301 (Notice Letters & Claim Charts). Instead, Iron Oak's 2014 letters referred to operations provided through other operating systems, *e.g.*, Android, operations provided through third party software, or actions allegedly taken by the recipient of the letter. For example, in the charts attached to its letter to Dell concerning the '275 patent, Iron Oak points to Dell's conduct and a product known as "Dell Download Manager" saying, "Dell uses various servers to deliver and install over-the-air operating code updates to laptops and tablets."; "Dell remotely upgrades the operating software for its laptops/tablets"; "Dell stores these software upgrades on servers that distribute …"; "Dell updates each laptop/tablet's software by merging the existing code …"; and "the servers used by Dell then initiate patch transmission …" Appx. at A93-A105 (*Iron Oak Techs, LLC v. Dell Inc.*, Case 1:17-cv-999, Dkt. 1 at Ex. G). Similarly, for the '658 patent, Iron Oak's 2014 letter to Dell points to Dell's laptops and tablets and their hardware configurations for providing wifi, LAN, and possible cellular network connections as well as memory, processor and antenna specifications. The 2014 letter cites only to Dell, Androidpolice, and T-Mobile web sites to support its assertions concerning the operations that Iron Oak accused. *Id.*

10. As with its 2014 letter to Dell, in the charts attached to its 2014 letter to Fujitsu, Iron Oak focused on Fujitsu's conduct saying "Fujitsu uses various servers to deliver and install over-the-air operating code updates to laptops and tablets."; "Fujitsu remotely upgrades the operating software for its laptops/tablets"; "Fujitsu stores these upgrades on servers that distribute …"; "Fujitsu updates each laptop/tablet's software by merging the existing code …"; and, "the servers used by Fujitsu then initiate patch transmission …" Appx. at A145-A156 (*Iron Oak Techs. LLC v Fujitsu Am. Inc.,* Case 3:16-cv-3319, Dkt, 1 at Ex. G). Iron Oak included screen shots for "system updates" provided by "Fujitsu Technology Solutions." Similarly, for the '658 patent, Iron Oak's 2014 letter to Fujitsu points to Fujitsu's laptops and tablets and their hardware configurations for providing wifi, LAN, and possible cellular network connections as well as memory, processor and antenna specifications. *Id.* at A153, A155. The 2014 letter cites to Fujitsu, AT&T, and cellphones.ca (for Fujitsu manuals) web sites to support its assertions concerning the accused operations.

11. Iron Oak's 2014 letters to Acer, Asus, Huawei,[6] Lenovo, and Toshiba followed the same template as its letters to Dell and Fujitsu. All cite only to web sites hosted by the target company, that describe the Android operating system, or that provide information concerning cellular connectivity standards or carriers. <u>None</u> cite to any Microsoft web sites. *See*, Appx. at A78-A301 (Notice Letters and Claim Charts ). To the extent that any specific software is identified, it is always specific to the target company, such as the Asus "Firmware-on-the-Air," "Acer System Update," and "Toshiba Service Station." As to the '658 patent, all of the letters point to the technical hardware specifications for the accused devices.

---

[6] *See* fn. 3 concerning the dispute as to whether this letter was ever sent/received.

12. Although Iron Oak has not produced any correspondence with Samsung, when it filed suit against Samsung in May of 2017, Iron Oak identified only Samsung Android products as allegedly infringing any of its patents. *See, Iron Oak Techs., LLC v. Samsung Elecs. Am., Inc. et al,* Case 3:17-cv-01259, Dkt. 1.

13. When Iron Oak first contacted Microsoft in May 2017 after the asserted patents had expired, Iron Oak did not identify any specific Microsoft products, including any aspect of the Windows operating system, as allegedly infringing.

14. Iron Oak first identified the Automatic Update and Connection Manager features in Windows as underlying its infringement allegations on the '275 and '658 patents in charts attached to its complaint against Dell in October 2017. Appx. at A82-A92 (*Iron Oak Techs, LLC v. Dell Inc.*, Case 1:17-cv-00999, Dkt. 1 at Ex. F). Those charts contrast with the charts and allegations included in its pre-expiration correspondence. Specifically, for the first time, Iron Oak cited to Microsoft web sites as explaining the accused operations. For the first time, Iron Oak pointed to servers operated by Microsoft. For the first time, Iron Oak referred to Windows features allegedly spanning multiple versions of Windows.

15. Although Iron Oak's Dell Complaint, filed after the expiration of the asserted patents, identified Windows as underlying certain of its infringement allegations, it continued to identify other operations as separately infringing. For example, as to the '275 patent, it stated "Additionally, Dell provides a number of other ways to update drivers and other portions of their operating code, such as 'Dell Command | Update', Dell Download Manager, and Dell Update."; "Dell also maintains a similar website to provide drivers and …"; and, "'Dell Command | Update', Dell Download Manager, and Dell Update each allow a user to automatically install patches …" Appx. atA82-A92 (*Iron Oak Techs, LLC v. Dell Inc.*, Case 1:17-cv-00999, Dkt. 1 at Ex. F). Similarly, as to the '658 patent, it stated "Dell provides additional software to facilitate the storage

8

…", and included screen shots and discussion of the "Dell ControlPoint Connection Manager" as a "network connectivity application …". *Id.* at A91-A92.

### III. ARGUMENT

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). Here, the sole issue to be decided is whether Iron Oak provided actual notice of infringement as to Microsoft products prior to the expiration of the asserted patents. Iron Oak concedes that 35 U.S.C. § 287 otherwise bars recovery of damages and, indeed, concedes that it cannot recover damages from Microsoft on that basis. Because there can be no dispute that Iron Oak's only purported evidence of pre-expiration notice is insufficient under the applicable legal standard for notice under § 287 as to Microsoft's products, the Court should grant Microsoft's motion for partial summary judgment of no damages as to Microsoft products regardless of what party sells those products. That judgment would affect all the consolidated cases in which Iron Oak seeks to recover such damages.[7]

#### A. Actual Notice Under Section 287 Requires A Specific Infringement Charge

Under § 287(a), patent owners who have licensed or used a patent cannot recover damages prior to constructive notice through marking or actual notice as to a specific alleged infringer. 35 U.S.C. § 287(a); *Gart,* 254 F.3d at 1345.[8] The Federal Circuit recently reiterated this notice

---

[7] As Microsoft understands the scope of Iron Oak's current contentions, this would include all the cases pending in MDL-2835 except the Huawei case.

[8] Section 287 provides, in relevant part, that to recover damages a patented article must be "marked," and "[i]n the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice."

9

requirement and the burden on the patent holder to mark not only its own products but also to require its licensees to mark products sold under licenses to the relevant patents. *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) (citations omitted) ("A patentee's licensees must also comply with § 287, because the statute extends to 'persons making or selling any patented article for or under [the patentee].'"). The Federal Circuit further clarified that "the patentee bears the burden of pleading and proving he complied with § 287(a)." *Id.* at 1367. Iron Oak cannot and does not plead compliance with § 287(a). Instead, Iron Oak must rely on actual notice of its infringement allegations as the starting point for any claim of damages.

Actual notice under § 287 "requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1993). Actual notice is not satisfied by general notice of the existence of a patent. *Id*. Nor is actual notice satisfied by allegations of infringement directed to other products, even other products having similar uses and functions. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (2001). The knowledge or understanding of the alleged infringer is not relevant to this inquiry. *Id*. Instead, the focus is on the actions of the patent holder. *Id*.

The *Gart* case is illustrative and controlling. In *Gart*, the patent holder had contacted Logitech, a computer mouse maker, on a number of occasions prior to bringing suit. In that correspondence, the patent holder made specific reference to certain claims in its patent and to certain computer mouse models sold by Logitech. *Gart,* 254 F.3d at 1337-1338. Although the correspondence was perhaps somewhat vague (at least for purposes of assessing declaratory judgment jurisdiction), the Federal Circuit found it sufficient to meet the requirements of § 287 – but only as to the mouse products *identified* in the letters. *Id.* at 1346. The Federal Circuit, however, affirmed the lower court's finding that notice was *not sufficient* as to other mouse

10

products that were *not identified* in the pre-suit correspondence.  For those other mouse products, the patent holder was barred from any pre-suit damages. *Id.* at 1346-47.

### B. Iron Oak Failed to Provide Actual Pre-Expiration Notice as to Any Microsoft Products Under 35 U.S.C. § 287

Under any reasonable reading of the pre-expiration correspondence, Iron Oak failed to provide the required actual notice under § 287 for any Microsoft products.  Indeed, Iron Oak concedes that it never provided any actual notice of infringement under § 287 to Microsoft and accordingly seeks no damages from Microsoft.  Iron Oak's effort to avoid that same result by alleging that Microsoft's Windows customers owe damages based on their sales and distribution of Microsoft Windows products via their computers, tablets or phones similarly must fail.

While Iron Oak admits that it must have provided actual pre-expiration notice to Microsoft customers in order to collect any damages for their alleged infringement, it contends its 2014 correspondence was sufficient to do so.  But, putting aside the question of whether that correspondence was sufficient to satisfy § 287's notice requirement as to the products actually identified therein, there can be <u>no dispute</u> that the letters do not identify Microsoft products as infringing and hence notice is not adequate as to Microsoft products.

Examination of the 2014 letters is sufficient to determine that no reasonable juror could understand that any of the letters constituted an "affirmative communication of a specific charge of infringement by a specific accused [Microsoft] product or device," *i.e.*, the Microsoft Windows operating system now accused by Iron Oak. *See Amsted Indus.*, 24 F.3d at 187.  Iron Oak's letters never expressly accused any Microsoft product of infringing.  Iron Oak never mentioned the Windows Automatic Update and Connection Manager features that it first identified as infringing in its Dell Complaint.  Iron Oak never cited to any Microsoft web sites or other materials as explaining the operations that it contends infringe the '275 and '658 patents.  Instead, the letters referred to other products and focus on operations allegedly performed by other parties, not

11

Microsoft. The letters cite exclusively to web sites operated by other parties, not Microsoft, and directed to other products, not Microsoft's. As such, regardless of whether the letters constitute actual notice as to those other products, they are not sufficient under § 287 for Microsoft products. *See Gart,* 254 F.3d at 1345.

Indeed, § 287 states that "[i]n the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of <u>the infringement</u> and continued to infringe thereafter…." 35 U.S.C. § 287 (emphasis added). "The [alleged] infringement" for which Iron Oak now seeks to recover damages is alleged infringement by the Microsoft Windows operating system running on other defendants' devices. Iron Oak did not provide a specific charge of "the [alleged] infringement" to any Defendant until after the patents had expired, and it therefore cannot recover for "the [alleged] infringement" by Windows or devices using Windows.

Iron Oak's subsequent conduct and court filings further confirm that its 2014 correspondence was not a specific charge of infringement as to Microsoft products. The record shows that Iron Oak knew well how to identify Microsoft's Windows as allegedly infringing, and could have done so readily in 2014 if that was what it was trying to communicate in the 2014 correspondence. Indeed, the contrasting manner in which Iron Oak later alleged infringement by Microsoft products undermines any argument that its prior correspondence provided sufficient notice.

For example, in its Complaint against Dell, with respect to the '275 patent, Iron Oak pointed expressly to "Dell laptops and tablets … running Microsoft Windows XP, Windows Vista, or Windows 7, or other windows versions with the Automatic Update features" and contended that "[o]n behalf of Dell, Microsoft maintains a web site that is operable to initiate …" Similarly, for the '658 patent Iron Oak pointed to "Dell laptops and tablets … running Microsoft

12

Windows XP, Windows Vista, or Windows 7, or other windows versions" with screenshots of a user manipulating the Windows Connection Manager feature. Appx. at A82-A92 (*Iron Oak Techs, LLC v. Dell Inc.*, Case 1:17-cv-00999, Dkt. 1 at Ex. F). Notably, the Windows versions that Iron Oak identifies date back as far as 2001 – long prior to the 2014 correspondence at issue here. Yet, this Complaint is the first time that Iron Oak ever alleged that Windows features created infringement under either patent, the first time it ever mentioned either of these Windows features, and the first time that it cited to Microsoft support web sites to explain the accused operations or used screen shots of Windows in operation. All of this was publicly available information in and well before 2014. *Id.* Iron Oak could have identified Microsoft products in its 2014 letters, but it did not.

The charts attached to the Dell Complaint further reinforce that Iron Oak's 2014 letters, to the extent they constituted *any* specific charge of infringement, did not charge infringement as to Microsoft products. Appx. at A82-A92 (*Iron Oak Techs, LLC v. Dell Inc.*, Case 1:17-cv-00999, Dkt. 1 at Ex. F). Nor did those letters charge infringement as to Dell computers generally, such as would sweep in the Windows operating system as a critical component of the infringing combination. Rather, as noted above, the 2014 letter to Dell identified Dell servers, various Dell branded software, and the Dell computer hardware specifications. The 2014 letters did not rely on features of the Windows operating system. And, the charts in Iron Oak's Dell Complaint do not abandon those 2014 allegations, but instead repeat them and add new allegations. Indeed, the Dell Complaint charts are explicit in their references to "additional" instances of infringement. Iron Oak's charts show that the allegations directed to the Microsoft Windows features are *in addition* to the allegations that it had made in the 2014 correspondence. In other words, the Windows-based allegations are not just tweaked versions of the 2014 allegations; they are newly hatched and presented for the first time with the Dell Complaint. Consequently, Iron Oak at the earliest

13

first gave actual notice of its claims against Dell based on Microsoft products in its October 2017 Complaints, after expiration of the asserted patents. Iron Oak therefore has no viable claim for pre-suit damages against Dell on those products.

Furthermore, given Iron Oak's counsel at that time, it is not surprising that the 2014 letters alleged infringement as to operations and device configurations distinct from any theories based on the use of Microsoft products. Attorneys from the Fish & Richardson firm authored the relevant 2014 letters. Then, as it still does today, Fish & Richardson represented Microsoft broadly in patent infringement matters across the country and hardly would have been sponsoring infringement allegations against Microsoft's most famous product.

Finally, Iron Oak's Complaint against Dell was the first time it had made a charge of infringement under either the '275 or '658 patent against any Microsoft product. Iron Oak has since leveled similar charges against Acer, Asus, Fujitsu, Huawei, Lenovo, Samsung and Toshiba in post-complaint infringement contentions. But Iron Oak's pre-expiration letters to these parties never leveled any charge of infringement directed to Microsoft products in its correspondence with these other parties.[9] As such, § 287 similarly bars any recovery for pre-expiration damages from these parties based on Microsoft products. In each instance, Iron Oak's allegations based on Microsoft's products simply come too late, as the patents expired before Iron Oak filed any of these lawsuits and before it gave any of these Defendants actual notice of its claims.

---

[9] In fact, Iron Oak's complaints against these other parties did not include infringement allegations directed to Microsoft's Windows operating system, further demonstrating that Iron Oak's allegations against Windows were an afterthought and were neither specifically charged in Iron Oak's 2014 letters, nor even in Iron Oak's mind at the time of those letters.

14

## IV. CONCLUSION

Because Iron Oak did not provide any Defendant with actual notice of infringement under 35 U.S.C. § 287 as to Microsoft products prior to the expiration of the asserted patents, it cannot recover any damages based on those products.  Microsoft's motion for partial summary judgment should be granted.

Dated: July 13, 2018

Respectfully submitted,

/s/ *Kelley A. Conaty*
Richard A. Cederoth (*pro hac vice*)
rcederoth@sidley.com
SIDLEY AUSTIN LLP
1 S. Dearborn Street
Chicago, IL  60603
(312) 853-7000

Michael J. Bettinger (*pro hac vice*)
mbettinger@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
(415) 772-1200

Kelley A. Conaty
kconaty@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, TX 75201
(214) 981-3300

ATTORNEYS FOR INTERVENOR AND
COUNTERCLAIM DEFENDANT
MICROSOFT CORPORATION

**CERTIFICATE OF SERVICE**

I certify that on July 13, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/*Kelley A. Conaty*